**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREA SUMMERS | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-3479 |
| | : | |
| THE CHILDREN'S HOSPITAL OF | : | |
| PHILADELPHIA | : | |

McHUGH, J.                                                    December 7, 2021

## MEMORANDUM

This is an employment action in which Plaintiff alleges she was discriminated and retaliated against on the basis of her race in violation of 42 U.S.C. § 1981. Defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion will be granted in part and denied in part.

### I.     Factual Allegations:

Plaintiff Andrea Summers, an African American woman, worked as a Nursing Assistant in the Neonatal Intensive Care Unit at Defendant The Children's Hospital of Philadelphia ("CHOP") for over 20 years until her termination on November 17, 2020. Pl.'s Corrected Compl. ¶¶ 3, 6, ECF 9.[1] Plaintiff alleges that this termination was "because of her race and in retaliation for

---

[1] Plaintiff filed a "corrected complaint" (ECF 9) within 21 days of Defendant filing its Motion to Dismiss (ECF 7). The only change made in the corrected complaint was to remedy a typographical error in Paragraph 9 of the Complaint to change "Non-White" to "White." Read in the context of the racial discrimination claim, the error and true meaning were obvious from the face of the original complaint. Defendants then filed a Motion to Dismiss the Corrected Complaint (ECF 11), construing it as an amended complaint under Fed. R. Civ. P. 15(a). Defendant's Motion to Dismiss the Corrected Complaint does not raise any new arguments, instead incorporating and relying entirely on the arguments made in its original Motion to Dismiss, ECF 7-1, and Reply Memorandum to the original Motion to Dismiss, ECF 10. The Reply Memorandum contains a section titled "Ms. Summers' Corrected Complaint Does Not Save Her Discrimination Claim" which addresses the one word edit in the corrected complaint. ECF 10 at 2-3.

In considering this Motion to Dismiss, I construe the corrected complaint as an amended complaint and use it as the operative complaint. I consider all arguments made by the Defendant in its Motion to

reporting two of her white female supervisors, Holly Sabatino and Tracy Windemere, to CHOP's Compliance Department, for inappropriate conduct directed towards her." *Id.* ¶ 6.  Specifically, in March and April 2020, Ms. Summers made three reports to the Compliance Department: two against her Nurse Manager, Ms. Sabatino, for communicating with Plaintiff in a "disrespectful manner" and falsely accusing Plaintiff of delaying delivery of a patient from one floor to another; and one against Sabatino's supervisor, Ms. Windmere, for falsely accusing Plaintiff of taking an unauthorized work break. *Id.* ¶¶ 7,8.

Plaintiff argues that a series of discriminatory consequences flowed from her decision to report her supervisors.  Plaintiff alleges that after she made these reports Ms. Sabatino began "to interact and speak to Ms. Summers in a condescending manner, unlike the way she interacted with White Nursing Assistants." *Id.* ¶ 9.  Plaintiff further states that Ms. Sabatino continued to mistreat Plaintiff and issued her three unjustified Disciplinary Action Reports in October and November 2020 for infractions she did not commit. *Id.* ¶¶ 10-20.  As a result of the first report, Ms. Summers was suspended from work from October 7 until October 16. *Id.* ¶ 11.  Due to the second report, Ms. Summers was placed on a Performance Improvement Plan and was required to enter CHOP's Employee Assistance Program, attend five sessions of company-sponsored therapy, and meet with Sabatino every other week. *Id.* ¶ 15.  Following the third disciplinary report, CHOP terminated

---

Dismiss the Corrected Complaint, which incorporates the arguments from its original Motion to Dismiss and Reply Memorandum.  There is no prejudice to either party in taking this approach, given the fact that the correct meaning was obvious in the initial Complaint and the Defendant's Motion to Dismiss the Corrected Complaint relies on the same arguments it raised initially. *See PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.,* 978 F.3d 871, 880 n.6 (3d Cir. 2020), *cert. denied sub nom. PDX N., Inc. v. Asaro-Angelo,* No. 20-1327, 2021 WL 4507638 (U.S. Oct. 4, 2021) ("Generally, 'matters of docket control,' like whether to consider a motion, 'are committed to the sound discretion of the district court.'") (citations omitted).

Ms. Summers' employment. *Id*. ¶ 19.  Plaintiff alleges that this termination was "because of her race and in retaliation for Ms. Summers having reporting Sabatino." *Id*. ¶ 21.

## II.    Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

## III.    Discussion:
### a.    The Race Discrimination Claim Is Sufficient under Rule 12(b)(6)

A plaintiff raising a claim of discrimination under § 1981 must allege facts showing "(1) that [she] belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Pryor v. Nat'l Collegiate Athletic Ass'n.,* 288 F.3d 548, 569 (3d Cir. 2002) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001)).  In the context of employment discrimination claims, the Third Circuit has explained that "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.,* 581 F.3d 175, 181-82 (3d Cir. 2009).

Plaintiff attempts to state a claim of race discrimination under the pretext theory set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Pl.'s Resp. Def.'s Mot. Dismiss, ECF 8-2 at 2.  To state a claim under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination by showing: 1) membership in a protected class; 2) qualification to hold the position; 3) an adverse employment action under 4) "circumstances that could give rise to an inference of discrimination."  *Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas,* 411 U.S. at 802).  All the elements are necessary to state a claim, and Ms.

Summers must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" to survive a motion to dismiss. *Fowler,* 578 F.3d at 213 (internal quotation marks omitted).

Plaintiff's Complaint clearly establishes the first three prongs.  As an African American, Plaintiff satisfies the first prong.  She meets the second prong because, prior to her termination, she was employed at CHOP for twenty years and there are no allegations that she is not qualified for her job.  And CHOP terminated her employment, which constitutes adverse employment action under the third prong.

The fourth prong is a closer issue.  Though the Complaint leaves much to be desired and lays out only sparse factual allegations, I find that it is sufficient to establish a reasonable expectation that discovery will reveal evidence of circumstances that could give rise to an inference of discrimination.  Many of Plaintiff's allegations are conclusory, merely reciting the elements of the claim, and need not be taken as true.[2]  Nonetheless, Plaintiff does allege some facts which must be taken as true that, when viewed the light most favorable to the plaintiff, plausibly establish entitlement to relief.  For example, Ms. Summers pleads that her supervisor spoke and interacted with her in a condescending way that was different from how she interacted with Plaintiff's white peers.  Pl.'s Corrected Compl. ¶ 9, ECF 9.  In addition, Ms. Summers alleges that she was reported for violating a variety of Defendant's policies when she did not in fact commit any of the

---

[2] Evaluating a Rule 12(b)(6) motion is a three-step process. *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court determines the elements plaintiff must plead to state a claim. *Id.* Second, the Court separates the complaint into allegations that must be taken as true and those that cannot be. *Id.*  Only factual, not conclusory, allegations must be taken as true. *Id.*  Third, the court takes the factual allegations to be true, draws all reasonable inferences in the plaintiff's favor, and determines whether the complaint plausibly establishes entitlement to relief. *Id.*

infractions.  *Id.* ¶¶ 10-20.  As a result of these false discipline reports, she was suspended from work for over a week, placed on a Performance Improvement Plan (PIP) and compelled to attend additional counseling sessions and meetings, and ultimately, terminated.  *Id.* ¶¶ 11, 15, 19.  The Complaint alleges that this unfounded discipline, placement on the PIP, and termination were based on her race.  *See e. g., id.* ¶¶ 13, 17, 21.

At this early stage of the proceedings, I find that the facts alleged to support the claim of race discrimination are sufficient to survive Defendant's Motion to Dismiss.

b.   The Retaliation Claim Fails under Rule 12(b)(6)

The Supreme Court has held that § 1981 protects individuals against retaliation.  *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008).  To maintain a retaliation claim under § 1981, Plaintiff must show that "(1) [s]he engaged in protected activity, (2) [her] employer took an adverse action against h[er], and (3) there was a causal connection between [her] participation in the protected activity and the adverse employment action."  *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010).  The elements of a § 1981 employment discrimination claim are identical to those brought under Title VII. *See Schurr v. Resorts Int'l Hotel, Inc.,* 196 F.3d 486, 499 (3d Cir. 1999).  As currently pled, the Complaint fails to establish that Ms. Summers engaged in protected activity.  I will therefore grant Defendant's Motion to Dismiss on the retaliation claim without prejudice.

To make out a claim for retaliation in the Title VII context, the Third Circuit has stated that a plaintiff must show "that she had a reasonable belief that her employer was engaged in an unlawful employment practice and that the employer retaliated against her for protesting against that practice."  *Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 865 (3d Cir. 1990).  It appears to follow the same standard in § 1981 cases.  *See Castleberry v. STI Group,* 863 F.3d 259, 267 (3d

Cir. 2017) (stating that the plaintiff "must have acted under a good faith, reasonable belief that a violation existed" under § 1981) (internal citations omitted).  Thus, to show that she "engaged in a protected activity" under § 1981, Ms. Summers must effectively show that she reasonably believed that Defendant was engaging in discrimination and that she explicitly challenged the unlawful conduct.

Although , as discussed above, Ms. Summers pleads sufficient facts to evince a reasonable belief that her employer illegally discriminated against her on the basis of race, Pl.'s Corrected Compl. ¶¶ 7, 8, 9, 23, ECF 9, she fails to plead that her reports to the Compliance Department constituted protected activity.  In addressing how to show that a plaintiff has protested or opposed a discriminatory activity, the Third Circuit has directed courts to focus on the "message being conveyed rather than the means of conveyance."  *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir. 2006); *see also Crawford v. Metropolitan Government of Nashville & Davidson County,* 555 U.S. 271, 277 (2009) (observing that the term "opposition" may be used in reference to "someone who has taken no action at all to advance a position beyond disclosing it"). Opposition need not be significant nor formal, however, "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135-136 (3d Cir. 2006).  It is the "objective message conveyed, not the subjective intent of the person sending the message, that is determinative" in the protected conduct analysis. *Id.* at 137.

As pled, her reports to the Compliance Department of disrespect and false allegations without any mention of racial discrimination do not constitute protected activity under § 1981.  In her Complaint, Ms. Summers does not allege that she reported any unlawful racially discriminatory action by her supervisors.  She alleges reporting her supervisors for communicating with her in a

6

"disrespectful manner," as well as falsely accusing her of delaying delivery of a patient to a different floor and taking an unauthorized work break.  Pl.'s Corrected Compl. ¶¶ 7, 8, ECF 9. Indeed, in her response to Defendant's Motion to Dismiss, Ms. Summers admits that she "did not expressly accuse Sabatino and Windemere of race discrimination when she reported their misconduct to defendant's Compliance Department ... ".  Pl.'s Resp. Def.'s Mot. Dismiss, ECF 8-2, at 4.  Rather, Ms. Summers states that given the context, "it reasonably can be inferred that she believed their actions were racially motivated."  *Id.*

Ms. Summer's argument here fails on several grounds.  First, while the Third Circuit has held that opposition to an employment practice may be identified by context, here, the only surrounding context pled in the Complaint is that she is African American and her supervisors are white.  Second, Ms. Summer's own belief of discrimination and subjective state of mind are irrelevant to the analysis of whether she engaged in protected conduct, because only the objective message conveyed is determinative.  Third, in analyzing the objective message communicated, Ms. Summers does not allege that she explicitly complained about racial discrimination or that she told the Compliance Department that she was being treated differently from her white peers.  She therefore cannot meet the protected activity requirement, as "[a] general complaint of unfair treatment is insufficient to establish protected activity."  *Curay,* 450 F.3d at 135; *see also Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (holding employee's general complaint of unfair treatment to human resources was not protected activity where employee did not complain about discrimination or otherwise allege that a protected characteristic was a basis for adverse employment action).

Because Ms. Summers fails to plead that she engaged in protected activity, Plaintiff's retaliation claim will be dismissed without prejudice.[3]

## IV.   Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is granted with respect to Plaintiff's retaliation claim and denied with respect to Plaintiff's race discrimination claim.


    /s/ Gerald Austin McHugh
United States District Judge

---

[3] At this stage, Plaintiff is not granted leave to amend.  In her response to the motion, she concedes she did not complain of racial discrimination.  If discovery materially changes the context in which the complaints were made, Plaintiff may seek leave to amend at that time.